|  |  |  |
|---|---|---|
| Kevin Sroga, | ) | |
| | ) | |
| Plaintiff, | ) | No. 14 C 06594 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| Toni Preckwinkle, Arnold Randal, Lisa Lee, | ) | |
| Michelle Gage, Daniel Betts, John Jekot, | ) | |
| Lenard Dufkis, and | ) | |
| Cook County Forest Preserve District, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Kevin Sroga used to work for the Cook County Forest Preserve District as an Aquatic Center Manager (the District has swimming-pool facilities known as aquatic centers). After Sroga was fired, he brought this suit against various County and District officials and employees, as well as against the District itself. The gist of the complaint (now on an Amended Complaint) is that the District fired him for trying to organize Aquatic Center employees into a union and for complaining about management problems at the District. In the Amended Complaint, Sroga invokes 42 U.S.C. § 1983 for his First Amendment claims, as well as Illinois state law.[1] Defendants moved to dismiss some of the claims for failure to state a claim, R. 30,

---

[1]The Court has subject matter jurisdiction over the federal claims under 28 U.S.C. § 1331, and supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367.

Defs.' Br.,[2] and Sroga voluntarily dismissed many of the claims. *See* R. 50, Pl.'s Resp. Br. at 1-2. Only four claims remain in dispute for this dismissal motion: (1) a Section 1983 claim based on violation of the First and Fourteenth Amendments against Defendants Betts and Jekot, who were Sroga's supervisors (Count One); (2) an Illinois common law retaliatory discharge claim against Defendant Gage, the Forest Preserve's Director of Human Resources (Count Six); (3) a claim for "supervisory liability" under Section 1983 against Defendants Betts and Jekot (Count Seven); and (4) a Section 1983 claim based on municipal liability against the District (Count Eight). For the reasons discussed below, the Court grants Defendants' motion to dismiss.

## I. Background

For purposes of this motion, the Court accepts as true the allegations in Sroga's Amended Complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In 2011 and 2012, Sroga worked for the Cook County Forest Preserve District, first as a seasonal lifeguard, and later as an Aquatic Center Manager. R. 16, Am. Compl. ¶¶ 15, 26-27. (The District's Aquatic Centers are recreational swimming pools located on Forest Preserve property.) Sroga had various responsibilities as the Aquatic Center Manager: he managed the Aquatic Center and its staff, tended to Aquatic Center patrons, and ensured public safety. *Id.* ¶ 29 (stating that as an Aquatic Center Manager, Sroga was "the first line of defense as a customer service representative[] … [a] role model[] to other less experienced and younger staff

---

[2]Citations to the record are noted as "R." followed by the docket number and the page or paragraph number.

members, [a] problem solver[], and … [a] leader[] and kn[e]w what [he was] doing when it c[ame] to 'public safety' and matters of 'public concern[]'").

During this time, a new administration took over the District. Am. Compl. ¶ 18. Defendants Randal, Gage, Jekot, and Betts were all part of this new administration. *Id.* ¶¶ 20-22, 30. Jekot and Betts oversaw the District's Aquatic Centers and were Sroga's supervisors. *Id.* ¶¶ 30-32. This change in administration also brought new rules for the Aquatic Centers and its employees. Am. Compl. ¶¶ 36, 41-42. For example, the new rules limited the number of hours that Aquatic Center staff employees could work. *Id.* ¶¶ 40-41. Lifeguards also were sent home early or had to be "on call" under the new rules. *Id.* ¶ 40. According to Sroga, these rules upset a lot of the employees and lowered employee morale. *Id.* ¶¶ 36, 41.

In response to these new rules, Sroga scheduled a meeting with Defendant Lisa Lee, a Labor Relations Attorney for the District. Am. Compl. ¶¶ 43-44. During the meeting, Sroga informed Lee that Jekot had devised and implemented the new rules without receiving prior approval from the District's administration. *Id.* ¶¶ 42, 45. Sroga also addressed issues plaguing the Aquatic Center, such as hiring and retaining Aquatic Center staff. *Id.* ¶ 45. He expressed to Lee that "the overall decision making by th[e] administration" decreased employee morale and jeopardized patron safety. *Id.* ¶¶ 45, 47. Finally, Sroga told Lee that he had "taken steps towards 'organizing' the Aquatic Division," including saying that he had sought out a union representative for the Aquatic Center staff. *Id.* ¶¶ 46-47.

The next day, Jekot called Sroga to schedule a meeting, which occurred later that day. Am. Compl. ¶¶ 48, 52. At the meeting, Jekot and Betts handed Sroga a termination letter. *Id.* ¶ 52. When Sroga asked why he was fired, Betts responded, "[W]e don't have to give you any reasons." *Id.* ¶ 53. According to Sroga, the District had never taken disciplinary action against him before firing him. *Id.* ¶ 63.

Several weeks later, Sroga went to the District's General Headquarters, hoping to examine his personnel file and see the reasons for the firing. Am. Compl. ¶ 55.[3] While there, he ran into Gage, who was the Director of Human Resources for the Forest Preserve. *Id.* ¶ 56. Sroga alleges that he was denied a chance to read his personnel file, and was told to make an appointment with the Legal Department in order to read it. *Id.* ¶ 57.

Sroga later filed a complaint with the Illinois Labor Relations Board, alleging that the District engaged in unfair labor practices and unlawfully fired Sroga. Am. Compl. ¶ 59. Jekot and Betts testified in the matter at a hearing before the Board in June 2014. *Id.* ¶¶ 60, 62, 64-65. Sroga alleges that Jekot and Betts "gave false, untrue and[/]or misleading testimony before the Illinois Labor Relations Board in an attempt to justify [his] dismissal." *Id.* ¶ 65.

Here in federal court, Sroga asserted eleven counts in the Amended Complaint. He eventually voluntarily dismissed five counts entirely and dismissed other counts as to certain defendants. Six counts remain: (1) Section 1983 claim based on violating the First Amendment free-speech clause (as incorporated

---

[3] The allegations refer to a "personal" file, but in context the allegations clearly mean "personnel" file. Am. Compl. ¶¶ 55-57 (referring to human resources file).

through the Fourteenth Amendment) against Betts and Jekot (Count One); (2) Section 1983 claim based on violating the First Amendment's freedom-of-association clause against Betts, Jekot, and Gage (Count Two); (3) Illinois common law retaliatory discharge claim against Betts, Jekot, and Gage (Count Six); (4) "supervisory liability" (as Sroga puts it) under Section 1983[4] against Betts and Jekot (Count Seven); (5) Section 1983 claim based on municipal liability against Cook County Forest Preserve District (Count Eight); and (6) indemnification under the Illinois Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/9-102 (Count Eleven).

Defendants now move to dismiss the following counts: Count One (free speech) against Betts and Jekot; Count Six (Illinois common law retaliatory discharge) against Gage; Count Seven against Betts and Jekot ("supervisory liability"); and Count Eight against the District (municipal liability).[5]

## II. Standard of Review

Defendants move to dismiss four Counts for failure to state a claim under Rule 12(b)(6). Defs.' Br. at 3-4. Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the … claim is and the

_____

[4]Though Sroga identifies "supervisory liability" under Section 1983 as a separate count, that is a theory of liability, rather than a stand-alone separate cause of action. *See infra* Section III.D.

[5]The following claims are not at issue here: Count Two against Betts, Jekot, and Gage; Count Six against Betts and Jekot; and Count Eleven. For the reasons discussed later in this Opinion, the Court must also dismiss Count Six against Betts and Jekot, even though Defendants did not move to dismiss on these grounds.

grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (internal quotation marks and citation omitted). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

### III. Analysis

### A. Voluntarily Dismissed Claims

In response to Defendants' motion to dismiss, Sroga stated that he voluntarily dismisses five counts entirely.[6] *See* Pl.'s Resp. Br. at 1. But Sroga also

---

[6]Sroga voluntarily dismissed the following five counts: (1) conspiracy to interfere with civil rights under 42 U.S.C. § 1985 against Jekot, Lee, Betts, and Dufkis (Count Three); (2) unfair labor practices under 29 U.S.C. §§ 157, 158 against Betts and Jekot (Count Four); (3) violations of the Illinois Public Relations Act, 5 ILCS 315/2, 5 ILCS 315/6(a), and 5 ILCS 315/10(a)(1) against Betts and Jekot (Count Five); (4) municipal liability based on ratification (Count Nine); and (5) municipal liability based on the "cat's

requested that the dismissals be without prejudice, so that if facts emerge during discovery supporting any of those dismissed claims, then he would seek leave to amend the complaint again. *Id.*; *see also* Fed. R. Civ. P. 41(a). Defendants objected to Sroga's request, asserting that the dismissals should be with prejudice under Rule 41(b). R. 53, Defs.' Reply Br. at 1-2; *see also* Fed. R. Civ. P. 41(b).

On balance, the dismissals should be *without* prejudice. It is true that the first amended complaint was filed a while ago, back in March 2015. R. 16. But there have been fits and starts of litigation activity, stalled at times by Sroga's prior *pro se* status, delays in service of process, and an unsuccessful settlement conference. So, despite the passage of time, the litigation has not moved forward so much that the dismissal should be with prejudice.[7] Having said that, it remains true that we have reached the one-year mark since the first amended complaint's filing, and that Sroga is also responsible for some of the delay in resolving this dismissal motion (he filed the response brief over one month after the response deadline). R. 51. So it is no sure thing that leave will be granted, if Sroga ever asks for it. And the Court will set May 2, 2016 as the Rule 16(b) deadline to amend pleadings and to join parties, so the more onerous "good cause" standard will govern as of that date. *See* Fed. R. Civ. Pro. 16(b)(3)(A).

---

paw" doctrine (Count Ten). Pl.'s Resp. Br. at 1. The Court notes that "ratification" and the "cat's paw" doctrine are, if even relevant to *Monell* liability, only theories of liability; they are not separate claims for relief in and of themselves.

    [7]That is not to say that Sroga may seek specific discovery on his voluntarily dismissed claims. Discovery is limited to the claims that remain at issue after the motion to dismiss stage.

## B. Count One Against Betts and Jekot

Moving on to the disputed claims, Count One alleges that Betts and Jekot violated the First Amendment (as incorporated through the Fourteenth Amendment) by firing Sroga for criticizing his supervisors' policies and faulting the new administration for the alleged issues plaguing the Aquatic Center.[8] Am. Compl. ¶¶ 45, 70. In response, Betts and Jekot invoke *Garcetti v. Ceballos*, 547 U.S. 410, 419 (2006), to contend that Count One should be dismissed because Sroga's speech was part-and-parcel of his duties as a public employee. Defs.' Br. at 4-7. According to Betts and Jekot, the First Amendment does not protect Sroga's speech because it was generated by his public-employee duties. *Id.*

The First Amendment only protects a government employee's speech where the employee speaks as a private citizen on matters of public concern. *Garcetti*, 547 at 419. The "threshold inquiry" is whether the individual spoke as a citizen or as a public employee. *McGarry v. McClellan*, 2012 WL 1985822, at *3 (N.D. Ill. June 4, 2012). In *Garcetti*, the Supreme Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." 547 U.S. at 421. This line-drawing recognizes the distinction between the government acting as censor versus acting as *employer*: "Restricting speech that owes its existence to a public employee's

---

[8]Sroga also claims Betts and Jekot fired him for trying to union-organize the Aquatic Center staff, or at the very least, discussing his intention to organize the staff. Am. Compl. ¶¶ 46-47, 76, 77. Sroga's organization activities and organization-related speech fall under Count Two—which Defendants did not move to dismiss—not Count One.

professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen." *Id.* at 421-22.

To determine whether Sroga's allegations have him speaking as a public employee (which would fail to state a claim) or a citizen (which would state a claim), the Court takes "a practical view of the facts alleged in the complaint, looking to the employee's level of responsibility and the context in which the statements were made." *Abcarian v. McDonald*, 617 F.3d 931, 937 (7th Cir. 2010); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1092 (7th Cir. 2008). This requires a "practical inquiry into what duties the employee is expected to perform … ." *Vose v. Kliment*, 506 F.3d 565, 569 (7th Cir. 2007); *see also Garcetti*, 547 U.S. at 424. The employee's formal job description is not dispositive, because the *reality* of the employee's duties might be different. *Vose*, 506 F.3d at 569; *see also Garcetti*, 547 U.S. at 424-25 ("Formal job descriptions often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes."). The overarching question after *Garcetti* is whether "the expression [was] something done pursuant to the employee's professional duties? If so, then the First Amendment has no application." *Davis v. Cook Cnty.*, 534 F.3d 650, 653 (7th Cir. 2008).

In this case, Sroga was an Aquatic Center Manager for the District when he met with Lee (a Labor Relations attorney for the District) to discuss the new rules

imposed by supervisors Betts and Jekot. Am. Compl. ¶¶ 27, 30-31, 44. In the Amended Complaint, Sroga lists the various responsibilities he had as an Aquatic Center Manager: he was "the first line of defense as a customer service representative[]," "[a] role model[] to other less experienced and younger staff members, [a] problem solver[], and … [a] leader[] and kn[e]w what [he was] doing when it c[ame] to 'public safety' and matters of 'public concern[].'" *Id.* ¶¶ 28-29.

At the meeting with Lee, Sroga discussed three issues: First, Sroga reported that Jekot had imposed new rules on Aquatic Center employees without receiving permission to do so. Am. Compl. ¶¶ 42, 45. Second, Sroga voiced concern over problems at the Aquatic Center, such as "[im]proper[] safeguarding [of] the Facility, the hiring of inadequate staffers, the hiring of unqualified staffers, [and] promoting and retaining staff members that should 'not' be in a 'role of responsibility' … ." *Id.* ¶ 45. Finally, Sroga informed Lee that the new administration's decision-making lowered employee morale and jeopardized patron safety.[9] *Id.* ¶¶ 45, 47.

Even drawing all inferences in favor of Sroga, the Amended Complaint only alleges that during the meeting with attorney Lee, Sroga spoke as a public employee and not as a private citizen. Sroga himself alleges that he had supervisory authority over the problems he discussed with Lee: Sroga was responsible for the welfare and safety of his staff, the Aquatic Center, and patrons. Am. Compl. ¶ 29. And the issues Sroga discussed with Lee—Jekot's failure to get approval for the new

---

[9]At the meeting, Sroga also informed Lee that he had "taken steps towards 'organizing' the Aquatic Division"; for example, he told Lee that he had sought out a union representative for the Aquatics staff. Am. Compl. ¶¶ 46-47. These allegations, however, are relevant to Count Two, not Count One.

rules, the new rules' negative impact on the Aquatic Center, and the new administration's negative effect on the staff and patron safety—are intimately connected with Sroga's responsibilities and his job as the Aquatic Center Manager. *See Kubiak v. City of Chicago*, 810 F.3d 476, 482 (7th Cir. 2016) (holding that plaintiff spoke as a public employee in part because "her speech was intimately connected with her job … [and] her professional duties"); *Trigillo v. Snyder*, 547 F.3d 826, 830 (7th Cir. 2008) (procurement manager spoke as a public employee when she complained about the Department of Corrections' procurement practices). In other words, Sroga's speech existed only because of his Aquatic Center Manager responsibilities. *See Callahan v. Fermon*, 526 F.3d 1040, 1041 (7th Cir. 2008) ("The controlling factor in the *Garcetti* inquiry is whether the speech '*owes its existence to a public employee's professional responsibilities.*'" (quoting *Garcetti*, 547 U.S. at 421) (emphasis added)). On these allegations, Sroga's speech was made pursuant to his employment duties, so he cannot state a First Amendment claim based on that speech.

Sroga maintains that he spoke as a private citizen, and not as a public employee, because he "complained to persons other than his supervisors and those within his established chain of command … ." Pl.'s Resp. Br. at 4. To be sure, whether the employee voiced grievances in a manner directed by "official policy," *Spalding v. City of Chicago*, 24 F. Supp. 3d 765, 776 (N.D. Ill. 2014), could be relevant to the public employee versus private citizen distinction. Say, for instance, if Sroga had a friend in the Forest Preserve District's arborist department and

Sroga voiced the management-employee concerns about the Aquatic Center to this arborist, then the fact that their discussion was outside the chain of command could render Sroga's speech as outside his employment duties. But that will not always be so. Take another example: if Sroga raised his concerns with one of the elected Forest Preserve District Commissioners, then that discussion might very well comprise employment-generated speech, even though the Commissioner is not in Sroga's day-to-day, operational chain of command. Indeed, that example demonstrates the danger of relying too heavily on "chain of command," because that term itself does not have a self-evident definition, especially given the wide variety of workplace-supervision arrangements. So whether the speech was made within the "chain of command," however the command chain is defined, might be relevant, but it is not dispositive one way or the other. *Cf. Garcetti*, 547 U.S. at 420 ("That Ceballos expressed his views inside his office, rather than publicly, is not dispositive.").

Instead, the ultimate question to ask is what the Supreme Court instructed in *Garcetti*: did the employee speak pursuant to his or her official duties? *See Garcetti*, 547 U.S. at 421. As explained earlier, Sroga spoke on management-employee issues within the scope of his employment duties, and he raised them with a Labor Relations attorney for the District. That is precisely the type of discussion—and the participants in a discussion—one would expect when an employee raises workplace concerns to his employer. That is especially true when Sroga was complaining about his supervisors and the new administration; he eventually would go around or over their heads to register his complaints, because they themselves

were the source of the alleged problems. All in all, the Amended Complaint can only be reasonably interpreted to say that Sroga's speech was made pursuant to his official duties, so *Garcetti* bars this First Amendment retaliation claim. Count One is dismissed.

## C. Count Seven Against Betts and Jekot

Because Count Seven is closely related to Count One, it makes sense to go out of number-order and discuss it now. In Count Seven, Sroga alleges that Betts and Jekot should be held liable for violating his constitutional rights under what Sroga calls a "supervisory liability" theory.[10] Am. Compl. ¶¶ 110-117. There is no such thing as vicarious liability under Section 1983, so to impose liability against a supervisor, a plaintiff must establish that the supervisor knew about the conduct that caused the constitutional violation and "facilitate[d] it, approve[d] it, condone[d] it, or turn[ed] a blind eye." *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (internal quotations and citations omitted). That is, a supervisor can be held liable if he "personally devised a deliberately indifferent policy that caused a constitutional injury … ." *Armstrong, v. Squadrito*, 152 F.3d 564, 581 (7th Cir. 1998). No matter what label is put on the theory of liability, there must be a causal link between a supervisor's *personal* conduct and the constitutional violation. And no matter what must be proven to establish supervisory liability, it is not a freestanding legal claim, independent from the violation of some constitutional right. Rather, it is only a theory of *liability* under which a plaintiff can hold a

---

[10]Sroga asserts that Betts and Jekot should be held liable as supervisors for Sroga's termination in 2012 and for their "false and untrue testimony" before the Illinois Labor Relations Board in 2014. Am. Compl. ¶ 114.

supervisor liable for unconstitutional conduct. So Count Seven cannot stand on its own, and because Count One is dismissed as to Betts and Jekot, so too must Count Seven. (It is possible that Sroga will pursue supervisory liability as a theory of liability in the other counts that remain in the case, such as Count Two, but there is no need for the Court to address this any more than pointing out that possibility.)

### D. Count Six Against Gage

Count Six is a claim that Gage, Betts, and Jekot violated Illinois common law by firing Sroga in retaliation for exercising his First Amendment rights. Am. Compl. ¶¶ 100-109. In the motion to dismiss, of those three Defendants, it is Gage who seeks dismissal of Count Six. Defs.' Br. at 13-14. Remember that Gage was the Director of Human Resources for the Cook County Forest Preserve. She argues that that Sroga fails to state a retaliatory discharge claim against her because "the First Amended Complaint is void of any factual content that Gage played any role in Sroga's termination." *Id.* at 13. In response, Sroga points to allegations that Gage knew about his discussions with Lee and adopted Betts' and Jekot's recommendation to fire him. Pl.'s Resp. Br. at 8-9; *see also* Am. Compl. ¶¶ 101, 105-07. Sroga maintains that these facts are enough to state a retaliatory discharge claim against Gage. Pl.'s Resp. Br. at 9.

The fundamental problem with Count Six is that *individuals* cannot be sued for retaliatory discharge in Illinois—only *employers*. The Illinois Supreme Court expressly announced that rule in *Buckner v. Atlantic Plant Maintenance, Inc.*, 694 N.E.2d 565, 570 (Ill. 1998). In *Buckner*, the Illinois Supreme Court dismissed

plaintiff's common law retaliatory discharge claim against his ex-employer's agent who had carried out the firing. *Id.* at 569-70. The state supreme court reasoned that "[t]he power to discharge rests with the employer. Subjecting the employer to liability for retaliatory discharge therefore acts to deter discharges which violate public policy," and *employer* liability was enough of a deterrence effect. *Id.* at 570. Given this, the Illinois Supreme Court concluded that "[t]he policy considerations that motivated this court to recognize a retaliatory discharge cause of action are adequately vindicated by allowing a cause of action against *employers.*" *Id.* at 569 (emphasis added); *see also Bovan v. Am. Family Life Ins. Co.*, 897 N.E.2d 288, 295 (Ill. App. Ct. 2008) (reasoning that under *Buckner*, "it is the employer and not the employer's agent who should be held liable for any damages caused"); *Smith v. Waukegan Park Dist.*, 896 N.E.2d 232, 236 (Ill. 2008) (observing that "general principles of agency law may not be logically applied to the tort of retaliatory discharge and … that the tort of retaliatory discharge may be committed only by the employer." (internal quotations and citations omitted)), *as modified on denial of reh'g* (Sept. 22, 2008). Under *Buckner*, Sroga's retaliatory discharge claim against Gage must be dismissed.

Two more points are worth making on the retaliatory discharge claim. First, Gage did not mention *Buckner* until her reply brief. *See* Defs.' Reply at 5. Generally speaking, "arguments raised for the first time in a reply brief are waived." *Shales v. T. Manning Concrete, Inc.*, 847 F. Supp. 2d 1102, 1114 (N.D. Ill. 2012); *see also Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.*, 235 F.R.D. 435, 437 (N.D.

Ill. 2006) ("'A reply brief is for replying' not for raising essentially new matter that could have been advanced in the opening brief." (quoting *Hussein v. Oshkosh Motor Truck Co.*, 816 F.2d 348, 360 (7th Cir. 1987) (Posner, J., concurring))). But Sroga did not ask to preclude Gage from relying on *Buckner*, nor did Sroga ask to file a sur-reply to address the argument. And it makes no sense to allow the claim to survive now, forcing the parties to expend time and energy on taking discovery on it, only for Gage to raise *Buckner* at the summary-judgment stage and win dismissal at that time. Nothing prevents Gage from relying on *Buckner* at that stage of the case, so the claim should just end here.

For the same reason, the retaliatory discharge claim against Betts and Jekot ought to be dismissed now too. It is true that Betts and Jekot completely failed to move to dismiss the claim against them; only Gage targeted Count Six in the dismissal motion. But once again, now that the defense knows that *Buckner* precludes a retaliatory discharge claim against individual agents, there is nothing stopping Betts and Jekot from making the argument at the summary-judgment stage. To avoid the waste of discovery on this claim, the retaliatory discharge claim (Count Six) is dismissed in its entirety. If the Court has missed something in this analysis as to Betts and Jekot, then Sroga may file a motion to reconsider, without the usual baggage of reconsideration motions, but otherwise the count is dismissed.

## E. Count Eight Against the Forest Preserve District

In Count Eight, Sroga alleges that the District is itself liable for allegedly causing violations of his constitutional rights. Am. Compl. ¶¶ 118-25. Municipal liability is permitted under Section 1983 in one of three ways:

> A local governing body may be liable for monetary damages under § 1983 if the unconstitutional act complained of is caused by: (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority.

*Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010); *Monell v. N.Y. City Dept. of Social Servs.*, 436 U.S. 658, 690 (1978). Sroga premises his *Monell* claim on the second ground for municipal liability: a widespread, but unofficial, practice. Am. Compl. ¶¶ 120, 123-24; Pl.'s Resp. Br. at 11. That is, Sroga contends that the District had a widespread practice of failing to train and supervise its employees. Am. Compl. ¶ 120. In response, the District asserts that Sroga fails to state a claim for municipal liability because the Amended Complaint "is void of any District 'custom or policy' responsible for Sroga's alleged injury." Defs.' Br. at 16.

Generally speaking, to adequately state a widespread-practice claim under *Monell*, Sroga must allege repeated constitutional violations to raise the inference that the District was "aware of the risk created by the custom or practice … and failed to take appropriate steps," *Thomas,* 604 F.3d at 303, or that the risk was "so obvious" that the policymakers can be said to have been deliberately indifferent to the risk, *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989). *See also Latuszkin v. City of Chicago*, 250 F.3d 502, 505 (7th Cir. 2001) ("The complaint does not allege

any facts tending to show that City policymakers were aware of the behavior of the officers, or that the activity was so persistent and widespread that City policymakers should have known about the behavior."). There is no "bright-line rule[] defining a widespread custom or practice … except that it must be more than one instance, or even three." *Thomas,* 604 F.3d at 303 (internal quotations and citations omitted). And in order for a training deficiency to trigger municipal liability, the allegations must adequately state that the District was "'deliberately indifferent' as to [the policy's] known or obvious consequences." *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002) (internal quotations and citations omitted); *see also Sornberger v. City of Knoxville, Illinois*, 434 F.3d 1006, 1029 (7th Cir. 2006) ("Establishing *Monell* liability based on evidence of inadequate training or supervision requires proof of 'deliberate indifference' on the part of the local government.").

In the Amended Complaint, Sroga alleges that the District had a policy of "fail[ing] to take the necessary precautions to adequately train, monitor and supervise its agent defendants." Am. Compl. ¶ 120; *see also* Pl.'s Resp. Br. at 11. Sroga also alleges that the District was deliberately indifferent to Sroga's "constitutional [and] State Law Rights," and that "[t]hese deliberate indifferences can only be attributed to the … District's 'failure to monitor, train, and supervise its agent officers.'" Am. Compl. ¶¶ 123-24. Those allegations are not enough, even drawing all reasonable inferences in favor of Sroga. To start, Sroga does not allege repeated constitutional violations; rather, Sroga alleges a single episode of

unconstitutional conduct.[11] This is fatal to Sroga's claim: under *Monell*, there must be "a true municipal policy at issue, not a random event." *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005); *see also Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir. 1985) (affirming dismissal of plaintiff's municipal liability claim where "the only facts alleged relate[d] to [plaintiff's single] arrest. Nothing in the complaint suggest[ed] that the incident was other than an isolated one unrelated to municipal policy"); *Falk v. Perez*, 973 F. Supp. 2d 850, 864 (N.D. Ill. 2013) (observing that "[t]he single incident that Plaintiff successfully alleges is not sufficient to satisfy the requirements to plead a *Monell* claim under *Twombly* and *Iqbal*").

The second fatal problem with Sroga's *Monell* claim is that it merely recites the *legal* elements of a *Monell* claim, as opposed to setting forth *factual* allegations. Sroga alleges that the District had a policy of failing to train and supervise employees and that as a result, the District was deliberately indifferent to Sroga's rights. Am. Compl. ¶¶ 120, 123-24. Those are not concrete facts that give rise to an inference that the District was deliberately indifferent to Sroga's rights. The Amended Complaint simply does not have *factual* allegations to suggest that the

---

[11]In his response brief, Sroga sets forth a list of facts in the Amended Complaint to support his *Monell* claim: "(1) [Sorga] made attempts to organize the union (¶ 43); (2) [Sroga] complained to the labor relations attorney, Defendant Lee, regarding his efforts and the treatment of the staff (¶¶ 44, 46); (3) Defendant Lee transmitted this communication to Sroga's supervisors (¶ 69); (4) Sroga was retaliated the next day in retaliation for his union organizing activities (¶ 70); and (5) the Forest Preserve District did nothing to stop or prevent his discharge (¶ 71), such as training or disciplining his supervisors or investigating his claims or retaliation." Pl.'s Resp. Br. at 11 (citing Am. Compl.). That is a long list, but these allegations all pertain to a *single* episode of unconstitutional conduct, rather than *repeated* constitutional violations.

policy of which Sroga complains—"fail[ing] to monitor, train, and supervise its agent officers," *id.* ¶¶ 120, 124—actually exists. *See Strauss*, 760 F.2d at 767 ("We affirm the lower court's dismissal of Strauss' complaint for failure to state a claim because he has alleged no facts to suggest that the policies of which he complains actually exist.").

So too with the allegations on deliberate indifference. To be sure, there are a variety of ways to allege enough facts on deliberate indifference:

> *Monell* liability based on evidence of inadequate training or supervision requires proof of 'deliberate indifference' … [t]his proof can take the form of either (1) failure to provide adequate training in light of foreseeable consequences; or (2) failure to act in response to repeated complaints of constitutional violations by its [employees]."

*Sornberger*, 434 F.3d at 1029-30. But Sroga's Amended Complaint does not allege any "foreseeable consequences" or any "repeated complaints of constitutional violations." *Id.* Nor does it identify *particular* deficiencies in the District's training programs or supervising practices that could lead to a reasonable inference of deliberate indifference. *See Harris*, 489 U.S. at 391 ("[F]or liability to attach in this circumstance the *identified deficiency* in a city's training program must be closely related to the ultimate injury." (emphasis added)); *see also Connick v. Thompson*, 563 U.S. 51, 61 (2011) ("[W]hen city policymakers are on actual or constructive notice that a *particular omission* in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." (emphasis added)). Simply mimicking *Monell* catchphrases like "deliberate indifference" and "failure to

train"—without pleading *facts* to support those legal elements—is not enough to survive a motion to dismiss.

The Court hastens to add that there is no heightened pleading standard for *Monell* claims, and "mere vagueness or lack of detail does not constitute sufficient grounds for a motion to dismiss." *Strauss*, 760 F.2d at 767. But *Iqbal* requires *factual* allegations; legal conclusions and conclusory allegations are not enough and are not entitled to the presumption of truth. 556 U.S. at 679 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *see also McCauley v. City of Chicago*, 671 F.3d 611, 617-18 (7th Cir. 2011) (observing that "[m]any of the alleged 'facts' are actually legal conclusions are elements of the cause of action, which may be disregarded on a motion to dismiss"). And here, Sroga has not pled *any* facts from which the Court could infer that the District had a widespread practice of failing to train and monitor its employees. *See McCauley,* 671 F.3d at 616; *see also Starks v. City of Waukegan*, 946 F. Supp. 2d 780, 792 (N.D. Ill. 2013) (granting defendant's motion to dismiss plaintiff's *Monell* claim because plaintiff's "allegations amount to nothing more than conclusory boilerplate"), *on reconsideration in part* (Aug. 16, 2013). Given this, Sroga's municipal liability claim, asserted in Count Eight, must be dismissed.

## IV. Conclusion

For the reasons discussed, Defendants' motion to dismiss, R. 30, is granted. The following claims are dismissed:

- Section 1983 claim based on violating the First Amendment free-speech clause (as incorporated through the Fourteenth Amendment) against Betts and Jekot (Count One);

- Section 1983 claim based on violating the First Amendment's freedom-of-association clause (as incorporated through the Fourteenth Amendment) against Lee (Count Two);

- Conspiracy to interfere with civil rights claim under 42 U.S.C. § 1985 against Jekot, Lee, Betts, and Dufkis (Count Three);

- Unfair labor practices claim under 29 U.S.C. §§ 157, 158 against Betts and Jekot (Count Four);

- Claim for violating the Illinois Public Relations Act, 5 ILCS 315/2, 5 ILCS 315/6(a), and 5 ILCS 315/10(a)(1) against Betts and Jekot (Count Five);

- Illinois common law retaliatory discharge claim against Gage, Betts, and Jekot (Count Six);

- Claim for "supervisory liability" under Section 1983 against Betts and Jekot (Count Seven);

- Section 1983 claim based on municipal liability against the District (Count Eight);

- Claim for municipal liability based on ratification against the District (Count Nine); and

- Claim for municipal liability based on the "cat's paw" doctrine against the District (Count Ten).

The following claims remain in the case:

- Section 1983 claim based on violating the First Amendment's freedom-of-association clause (as incorporated through the Fourteenth Amendment) against Betts, Jekot, and Gage (Count Two); and

- Indemnification under the Illinois Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/9-102, against the District (Count Eleven).

ENTERED:

_____s/Edmond E. Chang_____
Honorable Edmond E. Chang
United States District Judge

DATE: March 14, 2016